UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LATIEEAH HEMPHILL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO: 2:25-cv-126 |
| METHODIST HOSPITALS, | ) ) ) |
| Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Latieeah Hemphill ("Plaintiff" or "Hemphill"), by counsel, for her cause of action against Defendant, Methodist Hospitals ("Defendant" or the "Hospital"), alleges and states as follows:

### I.   NATURE OF CASE

1. Plaintiff brings this action against Defendant pursuant to 42 U.S.C. § 1981 ("Section 1981") and Indiana law.

### II.   PARTIES

2. At all times relevant to this action, Hemphill resided in the Northern District of Indiana.

3. Defendant is a privately owned hospital operating in and conducting business in the Northern District of Indiana.

4. Hemphill was an "employee" as that term is defined by 29 U.S.C. § 630(f).

5. Defendant is an "employer" as that term is defined by 29 U.S.C. § 630(b).

### III.   JURISDICTION

6. This Court has jurisdiction over the subject matter of this Complaint pursuant to

28 U.S.C. §§ 1331, 1343; and 42 U.S.C. § 1981.

7. This Court has supplemental jurisdiction over Plaintiff's state claim against Defendant pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as all events, transactions, and occurrences concerning this matter have arisen in Lake County, Indiana and the geographical environs of the Northern District of Indiana.

### IV. FACTUAL AND LEGAL ALLEGATIONS

9. Hemphill is a qualified African American woman.

10. Defendant, Methodist Hospitals, hired Plaintiff on or about July 3, 1999 at the Southlake campus in Merrillville, IN.

11. At the time of her termination, Plaintiff was a Health Unit Partner in the Intensive Care Unit ("ICU"), 2W2 department. She worked twelve-hour shifts from 6:00 a.m. to 6:30 p.m. three (3) days per week. Plaintiff would occasionally work overtime.

12. At all relevant times, Plaintiff met or exceeded Defendant's reasonable expectations.

13. Plaintiff did not receive a write-up, tardy, or other disciplinary measure in her twenty-five (25) years working for Defendant.

14. Plaintiff was a member of the SEIU Healthcare Illinois/Indiana Union ("Union") since 1999.

15. In early 2022, Plaintiff was elected to be a Union Steward which involved conducting investigations and filing grievances on behalf of employees.

16. On or about December 10, 2023, Plaintiff, in her capacity as a Union

Representative, conducted an investigation on behalf of Lydia Wright ("Wright"), an African American, pregnant woman and CNA, claiming retaliation based on pregnancy and race by Lyndsay Simpson ("Simpson"), a Caucasian woman.

17. Simpson is the ICU Manager and Assistant Director, and she was Wright's and Plaintiff's direct supervisor.

18. On December 11, 2023, after an investigation, Plaintiff filed a grievance on behalf of Wright against Simpson.

19. On or around December 13, 2023, only two (2) days after filing a grievance against Simpson, Simpson requested to meet with Plaintiff regarding alleged complaints and stated that Plaintiff should bring a Union Representative.

20. Plaintiff sought out a Union Representative, but one was not available, so Plaintiff asked Natalie Holland ("Holland"), another employee, to be present at the meeting per past practices.

21. At the meeting, Simpson informed Plaintiff that several complaints were made against her by nursing staff on November 27, 2023, but Simpson did not provide Plaintiff with any proof or paperwork to verify the alleged complaints. This was the first time Plaintiff learned of the alleged complaints.

22. The Union has a policy in which any discipline to be imposed must not exceed ten (10) working days, unless the parties agree to an extension.

23. On or around January 2, 2024, Simpson called Plaintiff over the phone to discuss another alleged complaint made on December 19, 2023, which again is beyond the ten (10) day deadline.

24. Simpson stated that she received an extension from Human Resources ("HR") to

address the charge with Plaintiff. Plaintiff did not agree to the extension.

25. Again, Simpson did not provide any proof of the alleged complaint or alleged conduct.

26. At no point during the call on January 2nd did Simpson request that Plaintiff meet her in-person nor did she schedule any follow-up meetings.

27. On or around January 8, 2024, Plaintiff received a call from Jaime Serrano ("Serrano"), a Caucasian man and Director of Labor Relations. He informed Plaintiff of a mandatory meeting with him and Simpson regarding Plaintiff's alleged insubordination. He did not provide further details.

28. On January 9, 2024, Plaintiff met with Serrano and Simpson, and she brought two (2) Union Stewards, Verna Wilson ("Wilson") and Markita Henderson ("Henderson"), to accompany her. Sheila Pochron ("Pochron"), a Caucasian woman and Director of Emergency Medicine and Critical Care, was also present at the meeting.

29. At the meeting, Serrano stated the basis of Plaintiff's alleged insubordination was her refusal to meet with Simpson on several occasions and her alleged refusal to meet with HR pertaining to a separate matter.

30. Serrano also stated that Simpson called him and said Plaintiff was "harassing" her and she felt "intimidated" by her.

31. Further, Serrano stated that an investigation was held. However, Plaintiff was unaware of any investigation.

32. At no point did Plaintiff refuse to meet with any supervisor at the Hospital.

33. Serrano instructed Plaintiff to leave the meeting while they discussed next steps.

34. After approximately fifteen (15) minutes, Serrano, Simpson, and Pochron determined that a follow-up meeting would be held on January 15, 2024, but no other action was taken at this time.

35. Serrano, Simpson, and Pochron stated that Plaintiff created a hostile work environment, cannot be trusted, and is a toxic individual.

36. On January 15, 2024, Plaintiff attended a follow-up meeting at HR's office in which Serrano, Simpson, Pochron, Wilson, and Henderson were present.

37. Serrano terminated Plaintiff for insubordination. However, due to her tenure and lack of disciplinary history, he offered Plaintiff a Last Chance Agreement ("Agreement").

38. The Agreement stated that Plaintiff was to transfer out of the ICU and that any infraction received within one (1) year of the agreement would result in immediate termination without grievance rights.

39. It was suggested to Plaintiff that she take a position at Defendant's Northlake campus, which is a less desirable location, and would require her to work the midnight shifts, which are also far less desirable than her current day-shift schedule.

40. Plaintiff did not sign the Agreement as she did not agree with its terms.

41. On January 25, 2024, Serrano sent a letter to Plaintiff and advised that, unless she finds a position in a different department by February 15, 2024 and signs the Agreement, she will be terminated effective the date of her last day of work which was January 15, 2024.

42. Further, Serrano advised Plaintiff that acceptance of a position with Defendant

would constitute her acceptance of the Agreement.

43. Deother Cook, Jr. ("Cook"), the Union Senior Organizer, advised Plaintiff that if she took a non-union position, she would not have to sign the Agreement.

44. Based on Cook's advice, Plaintiff only applied for non-union positions.

45. Sometime after January 15, 2024, Defendant made negative, false statements regarding Plaintiff to employees and/or management at Defendant's Northlake campus.

46. From January 15, 2024 to March 2024, Plaintiff applied to thirteen (13) open positions with Defendant. She was only offered interviews for three (3) of those positions, and she was selected for zero (0) of those positions.

47. As Plaintiff did not find another position with Defendant by February 15, 2024, she was terminated effective January 15, 2024.

48. Defendant intentionally discriminated against Plaintiff on the basis of her race.

49. Defendant retaliated against Plaintiff for engaging in a protected activity such as filing a grievance alleging retaliation based on pregnancy and race discrimination against another employee by a direct supervisor.

50. Defendant treated similarly situated non-African American employees more favorably than Plaintiff.

51. Defendant's actions have violated Plaintiff's rights as protected by Section 1981.

52. Plaintiff has suffered and continues to suffer damages as a result of Defendant's unlawful actions.

## V. CAUSES OF ACTION

## COUNT I

### SECTION 1981 – RETALIATION

53. Plaintiff incorporates paragraphs one (1) through fifty-two (52) of her Complaint as if it were set forth at length herein.

54. Plaintiff engaged in protected activity when she filed a grievance against a direct supervisor on behalf of another employee for retaliation based on pregnancy and race discrimination.

55. Defendant retaliated against Plaintiff due to the protected activity as protected by Section 1981 by offering her a less desirable position and ultimately terminating her.

56. The reasons put forth by Defendant to terminate Plaintiff are pretextual.

57. Defendant's unlawful retaliation has caused Plaintiff to suffer damages.

## COUNT II

### SECTION 1981 – RACE DISCRIMINATION

58. Plaintiff incorporates paragraphs one (1) through fifty-seven (57) of her Complaint as if it were set forth at length herein.

59. Defendant discriminated against Plaintiff because of her race.

60. Other, similarly situated employees and/or Union Stewards who were not African American were treated more favorably than Plaintiff in the terms, conditions, and privileges of their employment.

61. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Plaintiff's rights as protected by Section 1981.

## COUNT III

## DEFAMATION – SLANDER

62. Plaintiff incorporates paragraphs one (1) through sixty-one (61) of her Complaint as if it were set forth at length herein.

63. Defendant made false statements regarding Plaintiff to third parties.

64. Defendant's false statements caused actual harm and/or damage to Plaintiff's reputation.

65. Defendant knew the statements were false and/or acted with reckless disregard for the truth.

66. The Defendant made the false statements with negligence, recklessness, and/or actual malice.

67. Defendant's slander of Plaintiff's reputation has caused Plaintiff to suffer actual damages.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Latieeah Hemphill, respectfully requests that this Court enter judgment in her favor and award her the following relief:

1. Reinstatement of Plaintiff or payment to Plaintiff front pay in lieu thereof;
2. All wages, benefits, compensation, and other monetary relief to make her whole;
3. Compensatory damages;
4. Liquidated damages;
5. Punitive damages;
6. All costs and attorney's fees incurred as a result of bringing this action;
7. Pre- and post-judgment interest on all sums recoverable; and

8. All other legal and/or equitable relief this Court sees fit to grant.

Respectfully Submitted,

*s/ John H. Haskin*
John H. Haskin (7576-49)

*s/ Cassidy R. Hendrickson*
Cassidy R. Hendrickson (37712-41)

JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street. 2nd Floor
Indianapolis, Indiana 46204
Telephone:    (317)955-9500
Facsimile:    (317)955-2570
Email:    jhaskin@jhaskinlaw.com
    chendrickson@jhaskinlaw.com

## DEMAND FOR JURY TRIAL

Plaintiff, Latieeah Hemphill, by counsel, demands a trial by jury on all issues deemed so triable.

Respectfully Submitted,

*s/ John H. Haskin*
John H. Haskin (7576-49)

*s/ Cassidy R. Hendrickson*
Cassidy R. Hendrickson (37712-41)

JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street. 2nd Floor
Indianapolis, Indiana 46204
Telephone:    (317)955-9500
Facsimile:    (317)955-2570
Email:    jhaskin@jhaskinlaw.com
    chendrickson@jhaskinlaw.com